IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| National Fire Insurance Company of Hartford, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| Continental Western Insurance Company; and Company; Environmental Lighting Service, LLC, | ) ) ) |
| Defendants. | ) ) |

**NATIONAL FIRE INSURANCE COMPANY OF HARTFORD'S
COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, National Fire Insurance Company of Hartford ("National Fire"), by its attorneys Litchfield Cavo LLP bring this Complaint seeking a declaration of the parties' rights and obligations under certain contracts of insurance, and states as follows:

**NATURE OF THE SUIT**

1. This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332.

2. An actual and justiciable controversy exists between National Fire and Continental Western Insurance Company ("Continental Western"). This action seeks to resolve a dispute as to whether a primary policy and umbrella policy of insurance issued by Continental Western obligates Continental Western to afford coverage for the contractual liability of its insured, Environmental Lighting Service, LLC ("ELS"), and whether National Fire is entitled to reimbursement or recoupment of its payment under a Funding Agreement for the settlement of a lawsuit captioned *Kyle Frost v. Forbes Todd Automotive, LLC; Forbes Todd Automotive II, LLC;*

1

*Forbes Todd Group, LLC; Clark Richardson; Volkswagen Group of America, Inc.; and Lee Lewis Construction, Inc.*, Case No. CC-20-01626-D (Dallas County, Texas) ("Underlying Lawsuit").

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff National Fire is an Illinois corporation with its principal place of business located in Chicago, Illinois.

4. Defendant Continental Western is an Iowa corporation with its principal place of business in Iowa.

5. Defendant ELS is a single-member LLC organized under the laws of Texas. Its only member, David Bailey II, is located in Mississippi. ELS is a necessary party to this declaratory judgment action and has been joined solely to be bound by any judgment rendered in this case. No specific relief is sought against ELS. In the event ELS stipulates and agrees to be bound by the resolution of this case, the Plaintiff will seek to voluntarily dismiss it from this action.

6. Diversity jurisdiction exists. The Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.

7. Venue is proper in this district as some or all of the events giving rise to this dispute took place within this district.

## UNDERLYING LAWSUIT AND INCIDENT

8. On March 27, 2020, Kyle Frost initiated the Underlying Lawsuit by filing a complaint in the Circuit Court of Dallas County, Texas.

2

9. On January 25, 2021, Kyle Frost filed a First Amended Petition in the Underlying Lawsuit (the "Underlying Complaint"). A true and correct copy of the Underlying Complaint is attached as **Exhibit 1.**

10. In the Underlying Complaint, Kyle Frost sought damages he alleges resulted from physical injuries he sustained on January 29, 2020, when he was performing work at the Audi Dallas dealership located at 5033 Lemmon Avenue, Dallas, Texas 75209 ("Audi Dallas").

11. In the Underlying Complaint, Kyle Frost alleges that, "as he was performing his work, he was pulled off the ground by the garage door, becoming trapped by the door as it rolled up, and ended up falling to the concrete." Ex. 1 ¶ 10.

12. Kyle Frost sought damages from, *inter alia*, Lee Lewis Construction, Inc. ("Lee Lewis").

13. Lee Lewis is a general contractor who entered into a subcontract with ELS on November 28, 2017 for work to be performed at Audi Dallas (the "Subcontract Agreement"). A true and correct copy of the Subcontract Agreement is attached as **Exhibit 2.**

14. Article 10 of the Subcontract Agreement states, in part, the following:

10.1 Contractor [Lee Lewis] shall not be liable for any loss or casualty incurred or caused by Subcontractor [ELS]. Subcontractor shall maintain full and complete insurance on the Work until final acceptance of the Project. Subcontractor assumes all risk of loss for all of its Work regardless whether Subcontractor had previously been paid for the Work, and shall restore or repair any of Subcontractor's Work or material caused or resulting from casualties, harm, or risks not insured under any standard casualty or builder's risk policy which might be provided by Contractor.

10.2 As a further part of Subcontractor's overall obligation to protect others and hold Contractor harmless from all liabilities, Subcontractor shall obtain, before commencement, and maintain until final acceptance of the Project, full insurance coverage as may be specified in this Agreement or any contract or document incorporated herein, and in amounts not less than those so specified. All insurance shall be procured at Subcontractor's expense and shall have Owner and Contractor listed as an additional

insured. All insurance shall be maintained in the form, coverages and limits and with a company satisfactory to Contractor and having a Best's rating to A+. All certificates of insurance must be filed with Contractor five (5) days prior to scheduled commencement of the Work. See attached EXHIBIT "C" for a sample of the certificate of insurance requirement. In no case, however, shall Subcontractor procure and maintain less than the following insurance coverages:

\* \* \*

(2) Comprehensive General Liability Insurance including coverage for Explosion, Hazardous Material, and Collapse or Underground.

Liability Insurance and Completed Operations Coverage with minimum limits of:

Commercial General Liability

$1,000,000 Each Occurrence

$2,000,000 General Aggregate (per project)

$2,000,000 Products/Completed Operations Aggregate

$1,000,000 Personal and Advertising Injury

Any exceptions to the coverage limits stated herein must be approved in advance in writing by an officer of Contractor. Policy should include Contractor as additional insured as primary and non-contributory including ongoing and completed operations, and a waiver of subrogation. Policy must contain contractual liability on a per project aggregate basis.

\* \* \*

10.4 To the fullest extent permitted by law, Subcontractor is liable for and will defend, indemnify, hold harmless and reimburse Contractor, its surety, Owner, Architect (any other design professionals retained by either Owner or Architect), their representatives and employees, officers, agents, invitees and licensees of the same (collectively "Indemnitees"), against:

\* \* \*

(c) all liabilities, claims and demands for personal or bodily injury (including death) or property damage (real, personal, tangible or

4

      intangible) to any of the Work of Subcontractor or any other work or property of any other party, including injury of death to Subcontractor's employees, together with any resulting costs, legal fees and expert/consulting fees, arising out of or caused by any act or omission of the Subcontractor or any of its subcontractors, their agents or employees;

               \*   \*   \*

  (e)  all costs, damages, expenses and liabilities Indemnitees may sustain by reason of the failure of Subcontractor to indemnify any of the Indemnitees as required herein and elsewhere in the Subcontract; and

  (f)  all other costs, damage, expenses and liabilities (including all resulting costs, legal fees and expert/consultant fees) for which Contractor is liable to Owner under its Agreement, or to any third party who may be affected by construction of the Project on account of or in any way related to Subcontractor's Work.

**10.4.1**  **THE ABOVE REFERENCED DEFENSE AND INDEMNIFICATION OBLIGATION SHALL APPLY EVEN THOUGH THE MATTER IS THE RESULT OF THE CONCURRENT NEGLIGENCE OF ANY OR ALL OF THE INDEMNITEES (INCLUDING OTHER SUBCONTRACTORS OR SUBCONTRACTOR) TO THE EXTENT (A) THE CLAIM INVOLVES BODILY INJURY OR DEATH OF AN EMPLOYEE OF SUBCONTRACTOR, ITS AGENTS OR ANY OF ITS SUBCONTRACTORS OF ANY TIER OR (B) APPLICABLE LAW ALLOWS DEFENSE AND INDEMNITY FOR CONCURRENT NEGLIGENCE OF THE INDEMNITEES FOR OTHER CLAIMS FOR DAMAGES OR INJURY TO PERSONS OR PROPERTY IN ADDITION TO THOSE SET FORTH IN SUBPART (A) ABOVE.**

               \*   \*   \*

Ex. 2 pp. 8-11.

  15.  Kyle Frost was employed by ELS as of January 29, 2020.

  16.  Kyle Frost as acting within the scope of his employment by ELS when he was injured on January 29, 2020.

  17.  Kyle Frost's injuries were caused by ELS failing to turn off the power to the garage door before resuming work.

**INSURANCE POLICIES**

18. National Fire issued named insured Lee Lewis Construction, Inc. a general liability insurance policy under Policy No. 6075704890 with effective dates January 1, 2020 to January 1, 2021 (the "National Fire Policy").

19. Continental Western issued named insured Environmental Lighting Service LLC a general liability insurance policy under Policy No. CPA 4269989-46 with effective dates May 15, 2019 to May 15, 2020 (the "Continental Western Primary Policy"). A true and correct copy of the Continental Western Primary Policy is attached as **Exhibit 3.**

20. The Continental Western Primary Policy is subject to a $1,000,000 per occurrence limit and a $2,000,000 aggregate limit.

21. The Continental Western Primary Policy contains the following insuring agreement applicable to liability coverage, quoted in part:

> *SECTION I – COVERAGES*
>
> *COVERAGE A – BODILY INJ URY AND PROPERTY DAMAGE LIABILITY*
>
> *1. Insuring Agreement*
>
>> *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.*

Ex. 3.

22. The Continental Western Primary Policy contains the following provision regarding contractual liability coverage:

> *This insurance does not apply to:*

6

> *b. Contractual Liability*
>
> *"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*
>
>> *(1) That the insured would have in the absence of the contract or agreement; or*
>>
>> *(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:*
>>
>>> *(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and*
>>>
>>> *(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.*

Ex. 3.

23. The Continental Western Primary Policy's definition of "insured contract" is found in the Amendment of Insured Contract Definition, which states in relevant part:

> *"Insured contract" means:*
>
> * * *
>
> *f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.*

Ex. 3.

24. Continental Western also issued named insured Environmental Lighting Service LLC a commercial liability umbrella insurance policy under Policy No. CPA 42699889-46 with

7

effective dates May 15, 2019 to May 15, 2020 (the "Continental Western Umbrella Policy"). A true and correct copy of the Continental Western Umbrella Policy is attached as **Exhibit 4.**

25. The Continental Western Umbrella Policy afford a $10,000,000 per occurrence limit.

26. The Continental Western Umbrella Policy contains the following insuring agreement applicable to liability coverage, quoted in part:

> SECTION I – COVERAGES
> COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
>> a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Ex. 4.

27. The Continental Western Umbrella Policy contains the following provision regarding contractual liability coverage:

> *This insurance does not apply to:*
>
> *b. Contractual Liability*
>
> *"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*

8

> *(1) That the insured would have in the absence of the contract or agreement; or*
>
> *(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:*
>
>> *(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and*
>>
>> *(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.*

Ex. 4.

28. The Continental Western Umbrella Policy provides the following definition of an "insured contract", quoted in part:

> *"Insured contract" means:*
>
> \*   \*   \*
>
> *g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.*

Ex. 4.

29. The Continental Western Umbrella Policy's Declarations' Schedule of underlying insurance lists the Continental Western Primary Policy. **Exhibit 4**.

## **NATIONAL FIRE - CONTINENTAL WESTERN FUNDING AGREEMENT**

30. In a letter dated May 24, 2021, National Fire, as Lee Lewis's general liability carrier, tendered defense and indemnity for the Underlying Lawsuit to Continental Western. **Exhibit 5.**

9

31. In a letter dated August 27, 2021, Berkley Southeast Insurance Group ("Berkley"), as representative for and on behalf of Continental Western, agreed to provide Lee Lewis with a complete defense in the Underlying Lawsuit subject to reservation of rights under the primary policy issued by Continental Western. **Exhibit 6.**

32. In this August 27, 2021, letter, Berkley stated that it was providing the defense under the theory that Lee Lewis was a contractual indemnitee under the Continental Western Primary Policy, but denied that Lee Lewis was an additional insured under the Continental Western Primary Policy.

33. Continental Western did not reserve any rights under its umbrella policy.

34. On January 26, 2024, Continental Western reached a settlement in principle with Kyle Frost on behalf of all underlying defendants.

35. On February 26, 2024, National Fire and Berkley, on behalf of Continental Western, entered into a funding agreement to effectuate temporary payment of a settlement reached in the Underlying Lawsuit (the "Funding Agreement"). A true and correct copy of this Funding Agreement is attached as **Exhibit 7.**

36. Pursuant to this Funding Agreement, National Fire agreed to pay $1,000,000 for the settlement and Continental Western agreed to pay $1.5 million between its primary policy and umbrella policy.

37. National Fire and Continental Western also agreed that in the Funding Agreement that the parties were deferring their coverage disputes and that all coverage claims were reserved.

38. On May 7, 2024, the Underlying Lawsuit was dismissed with prejudice pursuant to settlement.

**COUNT I – DECLARATORY JUDGMENT**
(The Funding Agreement Requires ELS to Indemnify and Hold Lee Lewis Harmless)

39. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 - 38 as if fully set forth herein.

40. Pursuant to the subcontract between ELS and Lee Lewis, ELS has a duty to, *inter alia,* indemnify and hold harmless Lee Lewis against all liabilities, claims and demands for personal or bodily injury arising out of or caused by any act of omission of the Subcontractor, i.e., ELS, or any of the Subcontractor's subcontractors, agents or employees.

**COUNT II – DECLARATORY JUDGMENT**
(Continental Western's primary policy provides
contractual liability coverage under its primary policy)

41. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 - 40 as if fully set forth herein.

42. Plaintiff seeks a declaration that:

   a. The Subcontract is an "insured contract" under the Continental Western's primary policy; and

   b. Continental Western has a duty to indemnify ELS under the primary policy for liability arising out of the Subcontract.

**COUNT III – DECLARATORY JUDGMENT**
(Continental Western's primary policy provides
contractual liability coverage under its primary policy)

43. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 - 41 as if fully set forth herein.

44. Plaintiff seeks a declaration that:

   a. The Subcontract is an "insured contract" under the Continental Western's umbrella policy; and

11

  b. Continental Western has a duty to indemnify ELS under the umbrella policy for liability arising out of the Subcontract.

## COUNT IV – REIMBURSEMENT/RECOUPMENT

1. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 - 44 as if fully set forth herein.

2. National Fire is entitled to recoup or receive reimbursement from Continental Western for the $1 million indemnity payment made pursuant to the Funding Agreement.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, National Fire Insurance Company of Hartford respectfully request this Honorable Court grant it the following relief:

(A) Declaring that, pursuant to the Subcontract, ELS was required to indemnify and hold harmless Lee Lewis against all liabilities, claims and demands for personal or bodily injury arising out of or caused by any act of omission of ELSor any of its subcontractors, their agents or employees;

(B) Declaring that the Subcontract is an "insured contract" under the Continental Western Primary Policy;

(C) Declaring that Continental Western has a duty to indemnify ELS for its contractual liability to Lee Lewis under the Continental Western Primary Policy;

(D) Declaring that the Subcontract is an "insured contract" under the Continental Western Umbrella Policy;

(E) Declaring that Continental Western has a duty to indemnify ELS for its contractual liability to Lee Lewis under the Continental Western Umbrella Policy;

(F) Holding that National Fire is entitled to recoupment or reimbursement from Continental Western for all settlement payments made by National Fire pursuant to the Funding Agreement; and

(G) Any other and further relief that this Court deems appropriate.

                Respectfully Submitted,

By:   /s/Thomas M. Crawford
       Attorney for Plaintiff National Fire
       Insurance Company of Hartford

       Thomas M. Crawford (#6210832)
       Litchfield Cavo LLP
       303 West Madison Street, Suite 300
       Chicago, Illinois 60606
       Telephone: (312) 781-6679
       Facsimile: (312) 781-6630
       E-Mail: crawford@litchfieldcavo.com