IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:24-CV-5744 |
| v. | ) ) |
| CONTINENTAL WESTERN INSURANCE COMPANY; and ENVIRONMENTAL LIGHTING SERVICE, LLC, | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANT CONTINENTAL WESTERN INSURANCE COMPANY'S
MOTION TO TRANSFER VENUE AND MEMORANDUM IN SUPPORT THEREOF**

Now comes the Defendant, Continental Western Insurance Company ("Continental Western"), by and through its attorneys, Dana A. Rice and Adam P. Joffe of Traub Lieberman Straus & Shrewsberry LLP, and respectfully submits this Motion to Transfer Venue and Memorandum in Support Thereof pursuant to 28 U.S.C. § 1404(a).

**INTRODUCTION**

Plaintiff, National Fire Insurance Company of Hartford ("National Fire"), filed this lawsuit against Continental Western to determine whether a primary policy and umbrella policy of insurance issued by Continental Western obligates Continental Western to afford coverage for the alleged contractual liability of Continental Western's insured, Environmental Lighting Service, LLC ("ELS"), and whether National Fire is entitled to reimbursement or recoupment of its payment under a Funding Agreement for its contribution toward the settlement of a lawsuit captioned *Kyle Frost v. Forbes Todd Automotive, LLC; Forbes Todd Automotive II, LLC; Forbes Todd Group, LLC; Clark Richardson; Volkswagen Group of America, Inc.; and Lee Lewis Construction, Inc.*, Case No. CC-20-01626-D (Dallas County, Texas) ("Underlying Lawsuit").

Pursuant to 28 U.S.C. Section 1404(a), a balance of the competing equities warrants the transfer of this case from the Northern District of Illinois to the Northern District of Texas, where all of the alleged events giving rise to this lawsuit occurred, including where the commercial property that was the subject of the Underlying Lawsuit is located, and where the Underlying Lawsuit was filed and settled. The relevant sources of proof are in or near Dallas, Texas. The vast majority of fact witnesses are Texas residents. What's more, aside from being the location of National Fire's corporate headquarters, Illinois has no significant or material connection to this case.

For the reasons discussed more fully below, the private interests of the parties and the witnesses, together with the public interest considerations, weigh in favor of transferring this case from the Northern District of Illinois to the Northern District of Texas.

## **FACTUAL BACKGROUND**

This is an insurance coverage declaratory judgment action in which this Court is asked to determine whether National Fire and/or Continental Western owed a duty to indemnify National Fire's named insured, Lee Lewis Construction, Inc. ("Lee Lewis"), for sums paid to resolve the Underlying Lawsuit and, as a corollary, whether National Fire or Continental Western is entitled to recoup sums paid to effectuate that settlement. (Doc 1, 13.)

On January 25, 2021, Kyle Frost (a citizen of Texas) filed a First Amended Petition in the Underlying Lawsuit against Forbes Todd Automotive, LLC; Forbes Todd Automotive II, LLC; Forbes Todd Group, LLC (collectively, "Forbes Todd"), all of which are entities organized under the laws of Texas; Clark Richardson, a citizen of Texas; Volkswagen Group of America, Inc.; and Lee Lewis, a corporation organized under the laws of Texas. (A true and correct copy of the Underlying Lawsuit is attached to Continental Western's Counterclaim as **Exhibit A.**)

The Underlying Lawsuit arises out of injuries that Frost allegedly sustained while he was performing work at an Audi Dealership located at 5033 Lemmon Avenue, in Dallas, Texas ("Audi Dallas"). (Doc. 13, Ex. A.) The Underlying Lawsuit alleges that while Frost was performing his work, "he was pulled off the ground by the garage door, becoming trapped by the door as it rolled up, and ended up falling to the concrete." (Doc. 13, Ex. A, ¶ 10.) The Underlying Lawsuit alleges that Frost's injuries occurred as a result of negligence on the part of the named defendants.

Prior to the incident, Lee Lewis entered into a Subcontract with ELS (a corporation organized under the laws of Texas), in which ELS would act as subcontractor for Lee Lewis. (A true and correct copy of the Subcontract is attached to Continental Western's Counterclaim as **Exhibit B.**) Per section 14.4 of the Subcontract, the "Subcontract shall be interpreted under the laws of the state of Texas." (Doc. 13, Ex. B.)

Also prior to the incident, National Fire issued a commercial general liability insurance policy to Lee Lewis. Continental Western issued a commercial general liability insurance policy ("Primary Policy") (Doc. 13, Ex. C) and a commercial liability umbrella policy ("Umbrella Policy") (Doc. 13, Ex. D.) to ELS. The Continental Western Primary Policy and Umbrella Policy were both issued and delivered to ELS at its business address in Texas.

National Fire tendered Lee Lewis' defense in the Underlying Lawsuit to Continental Western. In response, Continental Western agreed to defend Lee Lewis in the Underlying Lawsuit, subject to a full and complete reservation of rights to later deny coverage under the Continental Western primary policy.

On or about January 26, 2024, Continental Western reached a settlement in principle with Frost on behalf of all underlying defendants. On February 26, 2024, National Fire and Continental Western entered into a funding agreement for the purpose of finalizing the settlement of the

Underlying Lawsuit ("Funding Agreement"). (Doc. 13, Ex. F.) Under the terms of the Funding Agreement, Continental Western agreed to pay $1,500,000 toward the resolution of the Underlying Lawsuit. (Doc. 13, Ex. F.) Under the terms of the Funding Agreement, National Fire agreed to pay $1,000,000 toward the resolution of the Underlying Lawsuit. (Doc. 13, Ex. F.) The Funding Agreement expressly provides that "This Agreement shall be governed by and construed in accordance with the laws of the State of Texas in all respects, including matters of construction, interpretation, validity and enforcement." (Doc. 13, Ex. F.)

A dispute has now arisen between National Fire and Continental Western as to the proper funding of the settlement agreement in the Underlying Lawsuit. More specifically, National Fire seeks to recoup the $1,000,000 it paid toward the settlement of the Underlying Lawsuit from Continental Western (Doc. 1.), while Continental Western seeks to recoup the $1,500,000 it paid toward the settlement from National Fire. (Doc. 13.)

## ARGUMENT

### I. Legal Standard

A district court is vested with significant discretion to transfer a civil action to another district under 28 U.S.C. § 1404(a) where: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; (3) the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice. *Cline v. Prudential Ins. Co. of Am.*, 2024 U.S. Dist. LEXIS 126871, *2 (N.D. Ill. July 18, 2024), citing *Amoco Oil. Co. v. Mobil Oil Co.*, 90 F.Supp.2d 958, 959 (N.D. Ill. 2000). "The moving party has the burden of establishing that the transferee forum is more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

4

**II.     Venue Is Proper in the Transferor District, and Venue and Jurisdiction Are Proper in the Transferee District.**

As set forth under 28 U.S.C. § 1404(a) and in cases such as *Cline*, transfer to another district requires, among other things, that (1) venue is proper in the transferor district (i.e., this district) and (2) venue and jurisdiction are proper in the transferee district (i.e., the Northern District of Texas). Here, National Fire acknowledges in its Complaint that venue is proper in the transferor district (Doc. 1, ¶ 7.) As National Fire contends, "some or all of the events giving rise to this dispute took place within this district." (*Id.*)

Additionally, jurisdiction and venue are proper in the transferee district. Specifically, the United States District Court for the Northern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, this matter involves insurance policies with limits in excess of $75,000, and an underlying settlement in excess of $75,000.

Venue is also proper in the United States District Court for the Northern District of Texas. Specifically, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this litigation occurred in that judicial district. The events giving rise to the Underlying Lawsuit occurred in the Northern District of Texas. The subject insurance policies were issued to insureds in the Northern District of Texas. The Funding Agreement and the Subcontract were both executed in the Northern District of Texas, and by their express terms are governed by Texas law.

Thus, venue is proper in the transferor district, and venue and jurisdiction are proper in the transferee district.

5

**III.     Transfer to the United States District Court for the Northern District of Texas Will Serve the Convenience of the Parties and Witnesses, and Will Promote the Interest of Justice.**

Pursuant to 28 U.S.C. § 1404(a), transfer is proper where it will serve the convenience of the parties and the witnesses and will promote the interest of justice. *Cline*, 2024 U.S. Dist. LEXIS 126871, *2. "To analyze whether transfer would best serve the convenience of the parties, the Court considers: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *Beattie v. Emerald Expositions*, 2024 U.S. Dist. LEXIS 177212, *24 (N.D. Ill. Sept. 30, 2024), citing *Rudy v. D.F. Stauffer Biscuit Co., Inc.*, 666 F.Supp.3d 706, 715 (N.D. Ill. 2023).

**A.     Plaintiff's Choice of Forum**

Generally, a plaintiff's choice of forum is given deference, particularly where a plaintiff selects its home forum. *Diamond Ins. Co. v. Cochran*, 2005 U.S. Dist. LEXIS 4430, *5 (N.D. Ill. Feb. 8, 2005). "A plaintiff's choice of forum, however, is entitled to less weight when 'the chosen forum lacks any significant connection to the cause of action.'" *Id.*, citing *Sanders v. Franklin*, 25 F. Supp. 2d 855, 858 (N.D. Ill. 1998). "Moreover, while a plaintiff's choice of forum plays an important role in determining whether to transfer venue, it is not absolute." *Id.*, citing *Bryant v. ITT Corp.*, 48 F.Supp.2d 829, 833 (N.D. Ill. 1999).

In this case, National Fire (a corporation organized under the laws of Illinois) chose its home forum to file this lawsuit. However, that is the full extent of any connection to this district or to the State of Illinois. As discussed more fully below, all three of the insurance policies at issue in this lawsuit were issued and delivered to insureds in the Northern District of Texas. The Funding Agreement at issue in this lawsuit incorporates a choice of law provision expressly setting

forth that Texas law controls. The Subcontractor Agreement was executed between two Texas entities for work to be performed in Texas. The injury giving rise to the Underlying Lawsuit occurred in Texas, and the Underlying Lawsuit itself pended in the Circuit Court of Dallas County, Texas.

Additionally, National Fire is a national corporation that conducts business and issues insurance policies to individuals and entities in all fifty states, so its geographic connection is far from limited to this district. National Fire's national business, of course, specifically includes one of the insurance policies at issue in this lawsuit, which it issued to Lee Lewis in the Northern District of Texas.

Accordingly, National Fire's selection of this forum should be afforded minimal weight in light of the other competing factors.

### B. The Situs of Material Events

"[T]he location of material events for purposes of venue is the location where the defendant's decisions and activities that gave rise to the claim took place." *Beattie*, 2024 U.S. Dist. LEXIS 177212, at *24, quoting *Rudy*, 666 F.Supp.3d at 716. "As to a corporate defendant's conduct, the Court should look 'to where the underlying business decisions were made.'" As the United States District Court held in *Hartford Cas. Ins. Co. v. Topsail Sportswear, Inc.*, 2010 U.S. Dist. LEXIS 69584, *5 (N.D. Ill. 2010):

> In similar cases, this court tends to give deference in declaratory relief cases to the forum where the insurance policy has been solicited, negotiated, delivered, and executed. See, e.g., *St. Paul Fire and Marine Insurance Co. v. Franklin Bank, S.S.B. and G.M. Sign.,* 2006 U.S. Dist. LEXIS 81109, 2006 WL 3197727 (N.D. Ill. 2006) (transferring venue to Texas; where the insurance policy had been solicited, negotiated, delivered, and executed.); *St. Paul Fire and Marine Insurance Co. v. Brother International Corporation,* 2006 U.S. Dist. LEXIS 39952, 2006 WL 1543275 (N.D.Ill. 2006) (transferring venue to New Jersey, where the insurance contract was formed and the defendant's business decisions were made.); [*6] *TIG*

*Insurance Co. v. Brightly Galvanized Products, Inc.,* 911 F. Supp. 344, 345-46 (N.D. Ill. 1996) (denying a motion to transfer a declaratory action to the underlying lawsuit's venue, because the relevant insurance documents and witnesses were in Illinois); *Washington National Life Insurance Co. v. Calcasieu Parish School Board,* 2006 U.S. Dist. LEXIS 28900, 2006 WL 1215413 (N.D. Ill. 2006) (transferring a declaratory action to Louisiana after finding, inter alia, that the situs of material events regarding the insurance policy favored Louisiana).

Here, each of the three subject insurance policies were solicited, negotiated, delivered to, and executed by insureds in the Northern District of Texas. On information and belief, the National Fire Policy was issued and delivered to Lee Lewis (a Texas corporation) at its business address in Texas.[1] The Continental Western Primary Policy and the Continental Western Umbrella Policy were issued and delivered to ELS (a Texas corporation) at its business address in Texas.

On top of that, the Funding Agreement obviously recognized the matter's nexus to Texas, as National Fire and Continental Western expressly agreed that "This Agreement shall be governed by and construed in accordance with the laws of the State of Texas in all respects, including matters of construction, interpretation, validity and enforcement." (Doc. 13, Ex. F.) Finally, as explained above, the incident that gave rise to the Underlying Lawsuit occurred in Texas, and the Underlying Lawsuit itself pended in the Circuit Court of Dallas County, Texas.

Simply put, this case is connected in virtually every way to the state of Texas and specifically the Northern District of Texas. In sharp contrast, the sole nexus between this matter and Illinois it that Illinois happens to be the location of National Fire's corporate offices.

C. **Relative Ease of Access to Sources of Proof**

In *Cline v. Prudential Ins. Co. of Am.*, 2024 U.S. Dist. LEXIS 126871, *4 (N.D. Ill. July 18, 2024), plaintiff opposed transfer and argued in part that if the parties were forced to engage in

---

[1] National Fire did not attach a copy of the policy it issued to Lee Lewis to its Complaint for Declaratory Judgment. However, on information and belief, the National Fire policy was issued and delivered to Lee Lewis, a Texas corporation, at its business address in Texas.

8

discovery, it would not require on-site inspection or in-person depositions. Rejecting this argument, the *Cline* court found that "[d]espite what Plaintiff believes the future of litigation holds or what the breadth of discovery will be, surely accessing documents in the state where the discovery is located is more convenient for the parties." *Id.*

So too is the case here. As in *Cline*, *supra*, all relevant events giving rise to this lawsuit occurred in the Northern District of Texas. Even if, for the sake of discussion, discovery could be performed digitally, there still exists the possibility of a site visit becoming necessary. For example, National Fire's Complaint alleges (without citation or evidentiary support) that:

> 15. Kyle Frost was employed by ELS as of January 29, 2020.
>
> 16. Kyle Frost was acting within the scope of his employment by ELS when he was injured on January 29, 2020.
>
> 17. Kyle Frost's injuries were caused by ELS failing to turn off the power to the garage door before resuming work.

(Doc. 1 at ¶¶ 15-17.)

None of these allegations come from the Underlying Lawsuit, which does not make any allegations relating to ELS or, for that matter, even mention the existence of ELS. (*See* Doc. 13, Ex. A.) In order to address coverage, National Fire (and, for that matter, Continental Western) will need to prove or disprove these allegations. Doing so could potentially require moving beyond simple document discovery and could require a site visit or depositions and likely a "trial within a trial" as to the cause of Frost's injuries (which was never adjudicated in the Underlying Lawsuit because that lawsuit settled prior to trial).

In other words, all of the sources of potential proof relevant to the claims at issue in this case (e.g., documents, the Audi Dallas Dealership, and witnesses) are located in the Northern

District of Texas and not the Northern District of Illinois. Accordingly, this factor weighs heavily in favor of transfer.

### D. The Convenience of the Witnesses

"The convenience of the witnesses is 'often viewed as the most important factor in the transfer balance.'" *Beattie*, 2024 U.S. Dist. LEXIS 177212 at *25-25, citing *Rudy*, 666 F.Supp. 35 at 716. "The convenience to non-party witnesses is given more weight than that of party witnesses, although convenience to party witnesses is afforded 'some weight.'" *Id.*

Here, as noted above, National Fire's Complaint alleges (without citation or evidentiary support) that:

> 15. Kyle Frost was employed by ELS as of January 29, 2020.
>
> 16. Kyle Frost was acting within the scope of his employment by ELS when he was injured on January 29, 2020.
>
> 17. Kyle Frost's injuries were caused by ELS failing to turn off the power to the garage door before resuming work.

(Doc. 1 at ¶¶ 15-17.)

And again, none of these allegations come from the Underlying Lawsuit, which does not make any allegations relating to ELS or, for that matter, even mention the existence of ELS. (*See* Doc. 13, Ex. A.) As the allegations in paragraphs 15-17 are particularly relevant to coverage under the subject insurance policies, several depositions will likely become necessary. For example, to the extent that depositions of ELS employees will be necessary to learn about the course and scope of Frost's work for ELS, those ELS employees are located in Texas. To the extent that witness testimony will be necessary to ascertain the cause of Frost's injuries (as again, this was not adjudicated in the Underlying Lawsuit prior to settlement), those witnesses will be located where

10

the injuries occurred, in Texas. Perhaps most obviously, to the extent that Frost's own testimony becomes necessary, Frost too is located in Texas.

Accordingly, this "most important" factor weighs heavily in favor of transferring this case to the Northern District of Texas.

### E. Convenience of the Parties

The convenience of the parties also weighs in favor of transfer. "The moving party…has the burden of showing that the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Marshal v. Wexford Health Sources, Inc.*, 2014 U.S. Dist. LEXIS 76545 (N.D. Ill. June 5, 2014). As discussed with respect to factors one through four, proceeding in this forum would be highly inconvenient to Continental Western, as this forum bears no connection whatsoever to the issues of fact in this case.

Potential witnesses and evidence are located in Texas. Relevant documents are located in Texas. The Underlying Lawsuit proceeded in its entirety (and settlement was reached) in Texas. Requiring Continental Western to litigate this case in the Northern District of Illinois would be a needless inconvenience to not only the witnesses but to Continental Western. In contrast, litigating this lawsuit in the Northern District of Texas (where National Fire will be required to regularly travel regardless of where the lawsuit ultimately proceeds) would not significantly inconvenience National Fire by creating unnecessary travel or related nuisance. This is particularly true where National Fire – although with its headquarters in Illinois – is a national corporation that regularly conducts business in all fifty states.

Accordingly, the convenience of the parties also weighs in favor of transferring this case to the Northern District of Texas.

F.     **Public Interest Factors**

Courts determining whether to transfer a case from one jurisdiction to another may also consider public interest factors. "Public interest factors focus on the efficient administration of the court system, such as: (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the relation of the community to the occurrences at issue; and (4) the desirability of resolving controversies in their locale." *Cline*, 2024 U.S. Dist. LEXIS 126871 at *5, citing *Amoco Oil*, 90 F.Supp.2d at 961-62.

These public interest factors also weigh in favor of transferring this case to the Northern District of Texas. For example, the relative congestion of dockets is a factor to be considered in determining the speed with which the case will proceed to trial. According to the most recent data from the Federal Court Management Statistics[2], the median time from filing to disposition for a civil case in the Northern District of Texas (6 months) is similar to that of the Northern District of Illinois (6.1 months) for cases that do not go to trial. Thus, transferring to the Northern District of Texas would not slow down – and if anything, would slightly speed up – adjudication of the case. If, for the sake of discussion, this lawsuit *does* go to trial, the Northern District of Texas (median of 22.5 months for disposition at trial) would be faster than the median time of disposition in the Northern District of Illinois (44.3 months).

Moreover, to the extent that analysis of the Funding Agreement will be at issue in this lawsuit, the Funding Agreement expressly incorporates a Texas choice of law provision. While this Court is certainly well qualified to interpret and apply Texas law, a Texas court applying Texas law better serves the public interest of resolving disputes in their locale.

---

[2] Available at http://www.uscourts.gov

12

Finally, as noted above, all of the subject insurance policies were issued and delivered to Texas insureds at their Texas business addresses. The Underlying Lawsuit arose from an injury that occurred in Texas, and the Underlying Lawsuit itself proceeded in the Circuit Court of Dallas County, Texas. It of course stands to reason that it would be highly desirable for a Texas court to adjudicate issues that are directly related to events that occurred in the state of Texas.

Accordingly, the public interest factors also weigh heavily in favor of transferring this case to the Northern District of Texas.

**WHEREFORE**, Defendant, Continental Western Insurance Company, respectfully requests that this Honorable Court enter an Order transferring this lawsuit to the United States District Court for the Northern District of Texas.

Respectfully submitted:
NAUTILUS INSURANCE COMPANY

s/Dana A. Rice
Dana A. Rice (Bar No. 6283827)
Adam P. Joffe (Bar No. 63000116)
Traub Lieberman Straus & Shrewsberry LLP
71 South Wacker Drive
Suite 2110
Chicago, IL 60606
Telephone: 312-332-3900
Facsimile: 312-332-3908
drice@tlsslaw.com
ajoffe@tlsslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2024, I electronically filed the above with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ Dana A. Rice
Dana A. Rice (Bar No. 6283827)
Adam P. Joffe (Bar No. 63000116)

            Traub Lieberman Straus & Shrewsberry LLP
            71 South Wacker Drive
            Suite 2110
            Chicago, IL 60606
            Telephone: 312-332-3900
            Facsimile: 312-332-3908
            drice@tlsslaw.com
            ajoffe@tlsslaw.com